IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 13, 2010 Session

## IN RE HEALTHWAYS, INC. DERIVATIVE LITIGATION

**Appeal from the Chancery Court for Davidson County**
**No. 08-1426-II    Carol L. McCoy, Chancellor**

_____

**No. M2009-02623-COA-R3-CV - Filed March 14, 2011**

_____

Plaintiff in shareholder derivative action appeals the dismissal of his suit alleging breaches of fiduciary duty and other misconduct, including insider trading, by current and former officers and directors of corporation. Plaintiff filed suit without first making demand on the board of directors of the corporation that the directors initiate the lawsuit. Defendants moved to dismiss the suit on the ground that plaintiff failed to allege with requisite particularity that such demand would have been futile. We affirm the dismissal of the action.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Paul Kent Bramlett and Robert Preston Bramlett, Nashville, Tennessee; Brett D. Stecker, Jeffrey J. Ciarlanto, and Robert B. Weiser, Wayne, Pennsylvania; and James G. Flynn and Robert I. Harwood, New York, New York, for the appellant, Roy T. Forrest.

Wallace W. Dietz and Brian D. Roark, Nashville, Tennessee; and Brandon R. Williams, John L. Latham, and Susan E. Hurd, Atlanta, Georgia, for the appellee, Healthways, Inc.

### OPINION

This is an appeal of the dismissal of a shareholder derivative action brought on behalf of Healthways, Inc., a Delaware corporation headquartered in Tennessee. Plaintiff Roy T. Forrest is a Healthways shareholder who filed a shareholder derivative suit against Healthways on June 27, 2008 in Davidson County Chancery Court. On July 24, 2008, a second Healthways shareholder, Nikki Tran, filed a separate shareholder derivative suit, also in Davidson County Chancery Court. On August 19, 2008, an order consolidating the suits was entered and, on May 11, 2009, Mr. Forrest filed a "Consolidated Verified Shareholder

1

Derivative Complaint," naming fifteen current or former officers or directors of Healthways as defendants.[1] The action was filed without plaintiff first making demand on the board of directors of Healthways that the directors initiate the action.

Plaintiff asserted separate causes of action that all defendants breached their fiduciary duty to the corporation by disseminating false and misleading information, by failing to properly oversee and manage the company, and by failing to maintain adequate internal controls; plaintiff also asserted that all defendants unjustly enriched themselves and wasted corporate assets. Plaintiff asserted a further claim against certain of the defendants for breach of fiduciary duties based on insider selling and misappropriation of information. The action sought compensatory damages as well as equitable and injunctive relief.

Defendants moved to dismiss the case on the ground that the complaint failed to allege with requisite particularity that demand on the directors to initiate the action would have been futile. The trial court agreed and dismissed the action. The sole issue on appeal is whether the court erred in finding that Plaintiff failed to plead demand futility with requisite particularity.

## I. Factual Allegations of the Complaint[2]

Healthways is a disease management company that "provides specialized, comprehensive Health and Care Support solutions to help people maintain or improve their health and, as a result, reduce overall healthcare costs." In 2005, Healthways began participating as a provider in the Medicare Health Support Pilot Program ("MHS Program"), an initiative of the Centers for Medicare & Medicaid Services of Health and Human Services ("CMS"). The MHS Program had two primary goals: to improve the quality of medical care received by Medicare and Medicaid beneficiaries who had multiple chronic conditions and to help the Medicare and Medicaid programs achieve cost savings targets.

The program was designed to consist of two phases, the first of which would last three years. During Phase I, CMS would evaluate the care that Medicare and Medicaid beneficiaries received, their satisfaction with the care received, and the cost savings achieved through the MHS Program. Once Phase I ended, CMS would decide whether to expand the MHS Program to a nationally rolled-out Phase II. At the outset of the program, CMS established a 5% cost savings target as a criteria for evaluating the success of Phase I. Under

---

[1] The named defendants were John W. Ballantine, J. Cris Bisgard, Thomas G. Cigarran, Henry D. Herr, Mary Jane England, Ben R. Leedle, L. Ben Lytle, C. Warren Neel, William C. O'Neil, Alison Taunton-Rigby, John A. Wickens, Mary A. Chaput, Mary Hunter, Matthew E. Kelliher, Alfred Lumsdaine.

[2] When ruling on a motion to dismiss, the allegations of the complaint are deemed to be true. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct . App. 1990).

2

the terms of Healthways' contract with CMS, failure to meet the 5% per month cost savings target could obligate Healthways to reimburse CMS for millions of dollar in fees that CMS paid to Healthways in connection with the MHS Program; it would also make Healthways' participation in any potential Phase II of the program unlikely.

Plaintiff alleges that, during the period from October 17, 2007 to May 11, 2009, defendants received quarterly "ARC reports"[3] from CMS which showed that Healthways was falling short of the 5% per month cost savings target but that, rather than disclose Healthways' inability to meet the Phase I savings target, "defendants instead began lobbying the CMS to lower the MHS Phase I savings targets." On January 7, 2008, Healthways filed a Form 8-K[4] with the SEC stating that the Office and Management and Budget had approved a request from CMS to lower the savings target for the MHS Program "from 5% net savings to budget neutrality (savings greater than or equal to fees)."[5] Plaintiff asserted that, after this announcement, Healthways stock increased from $64.50 to $67.21 per share, but that "[t]he price was artificially inflated, as not only were defendants specifically aware that the Company had been failing to meet the 5% cost savings target all along, but also that the Company could not meet the modified break-even savings target." Plaintiff further alleged that on February 26, 2008, Healthways issued a press release announcing that the Company was lowering its financial guidance for fiscal 2008 from a range of $782–815 million to $720–740 million and its earnings guidance per share from a range of $1.77–1.86 to $1.50–1.55 and that, as a result, Healthways stock fell to $31.54, representing a near 30% one-day loss and a decrease of more than 53% since January 7.

Plaintiff charged that communications issued by defendants relative to Healthways' participation in the MHS program were false and misleading[6] as were components of the

---

[3] These reports are not otherwise defined in the complaint but it appears that they were periodic performance reports.

[4] This is a report required to be filed with the SEC when a corporation is involved in a "material event."

[5] The complaint also alleges that CMS agreed to reduce the cost savings target to break even in January 2008.

[6] With specific reference to Healthways' participation in the MHS program, the complaint alleged:

Throughout the relevant period, defendants misrepresented and failed to disclose that:

a. Healthways had not been meeting the MHS Program Phase I savings targets, among other requirements, set by CMS;
b. As a result of Healthways' failures, CMS would not expand the MHS Program to Phase II and the Company would be required to reimburse CMS for fees it had already received

(continued...)

3

fiscal 2008 guidance which allegedly failed to disclose that major Healthways customers, including Blue Cross of Minnesota, Blue Cross of Massachusetts, and WellPoint were cancelling programs and/or requiring Healthways to provide more services for the same or less money with a resulting negative impact on profits.

Plaintiff also alleged that between October 29, 2007 and January 9, 2008 certain of the defendants, whom plaintiff referred to as the "insider trading defendants," sold a total of 288,824 Heathways shares while in possession of material, adverse non-public information and otherwise in violation of the company's Code of Conduct.

## II.  Applicable Law

Healthways is chartered under Delaware law and, at the time this action was initiated, was headquartered in Nashville, Tennessee; the parties do not contest the exercise of jurisdiction by the Tennessee courts or venue in Davidson County.

Tennessee adheres to the "internal affairs" doctrine, under which matters involving the internal affairs of a foreign corporation are deemed substantive in nature and "should be resolved in accordance with the law of the state of incorporation." *Hicks ex rel. Union Pac. Corp. v. Lewis*, 148 S.W.3d 80, 84 (Tenn. Ct. App. 2003) (citing *Bayberry Assocs. v. Jones,* No. 87-261-II, 1988 WL 137181, at *4 (Tenn. Ct. App. Nov. 9, 1988), *vacated on other grounds,* 783 S.W.2d 553 (Tenn.1990); *Amberjack, Ltd. v. Thompson*, No. 02A01-9512-CV-00281, 1997 WL 613676, at *8–9 (Tenn. Ct. App. Oct. 7, 1997).  As noted earlier, the sole issue presented in this appeal is whether the complaint alleged facts sufficient to excuse plaintiff from making a pre-suit demand on the Healthways board of directors.  In *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991), the United States Supreme Court explained that, in a shareholder derivative suit, any demand requirement or exception thereto, is deemed a matter of substantive law[7]; thus, we apply Delaware law to resolve the substantive issues.

---

[6](...continued)
in connection with the MHS Program;
c.  As a result of the foregoing, there was no reasonable basis for the revenue and earnings guidance they had issued for fiscal 2008.

[7]  The Court wrote:

In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of "substance," not "procedure." See *Daily Income Fund, Inc. v. Fox, supra,* 464 U.S., at 543-544, and n. 2, 104 S.Ct., at 842-843, and n. 2 (STEVENS, J., concurring in judgment).

*Kamen,* 500 U.S. at 96–97.

Procedural matters, however, including the standard of review, are governed by Tennessee law. *State ex rel. Smith v. Early*, 934 S.W.2d 655 (Tenn. Ct. App. 1996); *accord* 16 AM. JUR. 2D CONFLICT OF LAWS §§ 134–35 ("Matters of procedure . . . are governed by the law of the forum"). Because this appeal is from the grant of a motion to dismiss and involves a question of law, the scope of our review is *de novo* with no presumption of correctness. *Coulter v. Hendricks*, 918 S.W.2d 424, 426 (Tenn. Ct. App. 1995).

## III. Analysis

### A. Pre-Filing Demand

Pursuant to Delaware law, before a shareholder may initiate a derivative action, the shareholder must present the allegation to the corporation's directors and request that the board bring the suit. Del. Ch. R. 23.1;[8] *Stone v. Ritter*, 911 A.2d 362, 366–67 (Del. 2006). If the directors refuse to pursue the action, the shareholder may initiate the suit by showing that the board wrongfully refused to do so. *Id.* However, when demand has not been made, as is the case here, the complaint is subject to dismissal unless the plaintiff can plead with requisite particularity why it would be futile to make a demand upon the board of directors. *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008); *see also Stone*, 911 A.2d at 366–67.

In order to excuse demand under Del. Ch. R. 23.1, the complaint must plead "particularized facts" creating a reasonable doubt that "the directors are disinterested and independent" or that "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000) (quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)).[9] Where the subject of the derivative suit is a business decision of the board of directors, demand futility must be established pursuant to the standard articulated in *Aronson v. Lewis*. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993.) However, where a specific business decision of the board is not being challenged,[10]

---

[8] "In a derivative action brought by one or more shareholders . . . . [t]he complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Del. Ch. R. 23.1. The language of Tenn. R. Civ. P. 23.06 is substantially the same as Del. Ch. R. 23.1. Because in this appeal we are considering the adequacy of the allegations of the complaint to excuse the pre-suit demand requirement as a matter of substantive law, *see Kamen*, 500 U.S. at 96–97, we will apply Del. Ch. R. 23.1.

[9] The prongs of this test are disjunctive; if either prong is satisfied, demand is excused. *Brehm*, 746 A.2d at 253.

[10] "The essential predicate for the *Aronson* test is the fact that a *decision* of the board of directors is being challenged in the derivative suit." *Rales*, 634 A.2d at 933 (emphasis in original). Plaintiff's claims

(continued...)

5

as in the present case, we determine the issue of demand futility by applying the standard set forth in *Rales*.

Under *Rales*, the inquiry before the court is "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934.[11] The question of whether demand would be futile is considered on a claim-by-claim basis. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. 2003), *aff'd.* 845 A.2d 1040 (Del. Supr. 2004).

As a preliminary matter, we must determine the effect on our analysis of a provision of Healthways' certificate of incorporation which exculpates directors from liability under certain circumstances.[12] Plaintiff contends that 8 Del. Ch. § 102(b)(7), which authorizes the exculpatory provision,[13] does not exempt directors from liability for violations of the duties

---

[10](...continued)
in this case do not challenge a specific business decision.

[11] The Delaware Supreme Court articulated the inquiry as follows:

> That is, were [the members of the Board of Directors] incapable, due to personal interest or domination and control, of objectively evaluating a demand, if made, that the Board assert the corporation's claims that are raised by plaintiffs or otherwise remedy the alleged injury? This rule is premised on the principle that a claim of the corporation should be evaluated by the board of directors to determine if pursuit of the claim is in the corporation's best interests.

*Brehm*, 746 A.2d at 257 (citations omitted).

[12] The certificate was introduced into this record as an exhibit to Defendants' motion to dismiss which was grounded in Tenn. R. Civ. P. 12 and 23.06. While matters other than the complaint are generally not to be considered by the court in ruling on a Rule 12 motion to dismiss for failure to state a claim, we consider the certificate only insofar as it may have applicability to the standard we apply in assessing the sufficiency of the factual allegations of the complaint to comply with the requirement of Del. Ch. R. 23.1 that plaintiff allege reasons why demand was not given. In addition, the court may take judicial notice of the certificate in deciding a motion to dismiss. *In re Baxter Int'l, Inc. Shareholders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (citing *In re Wheelabrator Technologies Inc. Shareholders Litigation,* C.A. No. 11495, 1992 WL 212595 (Del. Ch., Sept. 1, 1992)).

[13] The provision reads as follows:

> No director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided however, that this provision shall not eliminate or limit the liability of a director (i) for any

(continued...)

6

of loyalty and good faith[14] and that, consequently, the provision has no application to the inquiry before this court because his claims are not grounded solely on the duty of care.

Where directors are protected by an exculpatory provision of the sort authorized by 8 Del. Ch. § 102(b)(7), the risk of liability is diminished; as a consequence, to excuse demand the complaint must contain particularized allegations of facts which allow the court to conclude that the challenged conduct falls outside the exemption. *In re Baxter Int'l, Inc. Shareholders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995). Consistent with Delaware law, the practical effect of the exculpatory provision in Healthways' certificate is to require Plaintiff to allege conduct that rises to the level of bad faith, intentional misconduct, or a knowing violation of law. *See id*. Accordingly, we will not excuse demand if the complaint states claims that arise solely out of the duty of care, but may excuse demand where there are particularized allegations that the directors breached their duties of loyalty or good faith.

*A. Allegations Related to Insider Trading and Misappropriation of Information*

In order to excuse demand based on insider stock sales, a plaintiff must plead facts supporting the inference that directors "possessed material, nonpublic company information" and "used that information improperly by making trades because [they were] motivated, in whole or in part, by the substance of that information." *In re Oracle Corp.,* 867 A.2d 904, 934 (Del. Ch. 2004). A complaint that alleges "directly and by imputation" that directors knew of the material information and made trades on that basis satisfies this standard. *Zimmerman v. Braddock*, 2005 WL 2266566, at *8 (Del. Ch. Sept. 8, 2005), *rev'd on other grounds*, 906 A.2d 776 (Del. 2006). However, "[m]ere notice pleading is insufficient to meet the plaintiffs' burden to show demand excusal in a derivative case," and a director will not be interested for purposes of demand futility based on the mere fact that he or she traded stocks. *Guttman v. Huang*, 823 A.2d 492, 499, 502 (Del. Ch. 2003). Further, directors are not "interested" simply because "a derivative plaintiff cursorily alleges that [the director] made sales of company stock in the market at a time when he possessed material, non-public information." *Id*. at 502. The key inquiry is:

---

[13](...continued)
breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts of omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit.

[14] ". . . Section 102(b)(7) protections do not apply to violations of the fiduciary duties of good faith or loyalty." *Emerald Partners v. Berlin*, 726 A.2d 1215, 1227 (Del. 1999).

whether the plaintiffs have pled particularized facts regarding the directors that create a sufficient likelihood of personal liability because they have engaged in material trading activity at a time when (one can infer from particularized pled facts that) they knew material, non-public information about the company's financial condition.

*Id.* at 502 (Del. Ch. 2003). To proceed on an insider selling claim, a plaintiff must show "that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Id.* at 505 (quoting *Stepak v. Ross*, 1985 WL 21137, at *5 (Del. Ch. Sept. 5, 1985)).

The complaint identifies defendants Cigarran, Herr, and Lytle as "interested"[15] current or former directors of Healthways who traded their stock and as to whom demand would have been futile. The complaint alleged that, as directors of Healthways, they owed a fiduciary duty to Healthways and possessed material, non-public information. The complaint alleges that Healthways was not succeeding in meeting the cost savings targets for the MHS Program; that Healthways' revenues and earnings would be negatively impacted once "the truth" of its progress within the MHS Program became known; that Cigarran, Herr, and Lytle were aware, contrary to the press releases and public statements of "the defendants," of Healthways true financial condition; and that they sold their stocks on the basis of this inside information. The allegations are sufficient to support an inference that Cigarran, Herr, and Lytle initiated and completed sales of their stock on the basis of adverse, material and non-public information. Inasmuch as the particularized allegations support a claim of insider trading, the exculpatory provision does not provide protection to Cigarran, Herr, and Lytle, since insider trading, if proven, constitutes a breach of the duty of loyalty and is a non-exculpable claim. *Pfeiffer v. Toll*, 989 A.2d 683, 691 (Del. Ch. 2010). Therefore, the complaint contains allegations of breach of the duty of loyalty by insider trading with sufficient particularity as to Cigarran, Herr, and Lytle to conclude that demand as to each of them on this particular claim would have been futile.

Applying this pleading standard to the remaining directors, we conclude that the complaint does not contain particularized factual allegations of insider trading and misappropriation of information sufficient to establish interest or lack of independence which would excuse demand as to those directors.[16] *See Pedroli ex rel. Microtune, Inc. v. Bartek*,

---

[15] "A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders. In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Rales*, 634 A.2d at 936.

[16] The complaint does contain specific allegations that members of the Governance Committee were responsible for reviewing compliance with the Healthways Code of Conduct and that the committee members

(continued...)

564 F. Supp. 2d 683, 695 (E.D. Tex. 2008) (holding that, under Delaware law, conclusory allegations regarding the directors as a group are insufficient to demonstrate demand futility).

Our determination that demand would have been futile as to three of the eleven directors is insufficient to establish demand futility of a majority of the board. *See Rales*, 634 A.2d at 937 ("[T]he appropriate inquiry is whether [the] amended complaint raises a reasonable doubt regarding the ability of a majority of the Board to exercise properly its business judgment in a decision on a demand had one been made at the time this action was filed."). Consequently, demand was not excused as to the claim of insider trading and misappropriation of information.

## *B. Allegations Relating to Members of the Governance Committee*

The complaint alleges that the Governance Committee is charged with, *inter alia,* the responsibility to review compliance by officers and directors with Healthways' Code of Conduct and to recommend to the entire board "any remedial actions deemed necessary" on the basis of such review. It is further alleged that the insider sales violated the Code of Conduct[17] which prohibited trading in Healthways stock if a "Healthways colleague" is in possession of material, non-public information. In his brief on appeal, plaintiff further asserts that sales of stock by defendant Hunter on January 7, 2008 and by Lytle on January 9, 2008 violated the Code of Conduct because they were made within three days of the filing of the January 7 Form 8-K. As members of the Governance Committee, defendants O'Neil, Wickens, Ballantine, England, and Taunton-Rigby, are alleged to have permitted the

---

[16](...continued)
breached their fiduciary duties in "failing to take remedial measures" relative to the alleged insider trading. We discuss these allegations separately at § III B.

[17] A portion of the Code of Conduct was excerpted in the Complaint and states in relevant part:

> If an [sic] Healthways colleague has material, non-public information relating to Healthways (either positive or negative), until such information has been made available to the public through authorized channels, that person may not buy or sell Healthways stock nor may this person pass such information on to others who may trade in Healthways stock; to do so would constitute insider trading and could subject the individual to substantial civil and criminal penalties.

Defendants included the following excerpt from the Code of Conduct in their memorandum in support of the motion to dismiss, which we include for purposes of completeness:

> After Healthways has made a public announcement of material information, including earnings releases, because Healthways stockholders and the investing public should be afforded the time to receive the information and to act upon it, [company insiders] should not buy or sell Healthways stock until the third business day after the information has been released.

improper sales to occur and failed to take remedial measures. Plaintiff claims that the actions and inactions of the Governance Committee members violated the duties of due care, loyalty and good faith thereby subjecting them to a substantial likelihood of liability and excusing demand as to those defendants.

Consistent with our holding relative to the application of the exculpatory provision in Healthways' certificate of incorporation, to the extent plaintiff alleges that the actions or inactions of the members of the Governance Committee violated the duty of due care, they are not subjected to a substantial likelihood of liability and, consequently, demand is not excused. *See In re Baxter*, 654 A.2d at 1270.

With respect to the contention that the Governance Committee members violated the duty of good faith, the complaint alleges that Governance Committee members had a duty to review whether stock sales by persons covered by the Code of Conduct violated the code and to recommend remedial action to the Board of Directors. The Complaint, however, does not allege that any members of the committee had knowledge of the trades at issue or that the trades were brought to the attention of the members of the committee so that any appropriate remedial measures could be recommended. To the extent plaintiff contends that the allegations support a claim of breach of the duty of good faith, they do not suffice. *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).[18]

The duty of loyalty under Delaware law has been defined as:

> . . . a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers.

*Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939). The complaint does not contain particularized factual allegations sufficient to support an inference that the members of the Governance Committee violated the duty of loyalty as defined by applicable law with respect to the insider stock sales.

---

[18] Where a claim for failure to monitor is alleged, "only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability. Such a test of liability—lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight—is quite high." *In re Caremark.*, 698 A.2d at 971.

We find that the specific allegations of the complaint relative to the Governance Committee members do not meet the high standard under Delaware law to excuse demand. The Governance Committee defendants were not subjected to a substantial likelihood of liability and, as a consequence, demand was not futile.

*C. Allegations Relating to Members of the Audit Committee*

The complaint asserts causes of action against all defendants and, particularly, the members of the Audit Committee for breach of fiduciary duty for disseminating false and misleading information and for failing to maintain adequate internal controls.[19] Del. Ch. R. 23.1 requires that the complaint allege the plaintiff's reasons for failure to make demand on the directors that they pursue the action. The complaint does not allege that demand was futile on the part of board members who were not members of the Audit Committee relative to the causes of action for breach of fiduciary duty for disseminating false and misleading information and failure to maintain adequate internal controls.[20] The complaint thus fails to satisfy the requirements of Rule 23.1 as respects the non-Audit Committee directors. *In re Abbott Laboratories Derivative Litigation* 325 F.3d 795, 804 (7th Cir. 2003) ("The shareholder must state with particularity why a demand would have been futile.") (citing *Starrels v. First National Bank of Chicago*, 870 F. 2d 1168, 1170 (7th Cir. 1989). For this reason, we only consider the specific allegations of the complaint relative to the futility of demand on the members of the Audit Committee.

In relevant part, the complaint states as follows:

148. [E]ach of the defendants (and particularly the Audit Committee defendants) had a duty to ensure that Heathways disseminated accurate, truthful and complete information to its shareholders, especially regarding the adequacy of the company's internal controls.
149. Defendants violated their fiduciary duties of care, loyalty and good faith by causing or allowing the company to disseminate to Healthways shareholders

---

[19] We consider the allegation that defendants (including the Audit Committee members) disseminated false and misleading information as asserting a claim for breach of the fiduciary duties of loyalty and good faith, and the allegation that defendants failed to maintain adequate controls as asserting a claim for breach of fiduciary duty of due care which may, depending on the severity of the allegations, give rise to a claim of breach of duty of good faith. *See In re Caremark.*, 698 A.2d at 971. As we held in our discussion of allegations relating to members of the Governance Committee, to the extent plaintiff alleges that the actions or inactions of the members of the Audit Committee violated the duty of due care, by virtue of the exculpatory provision, they are not subjected to a substantial likelihood of liability and, consequently, demand is not excused.

[20] Plaintiff does allege that demand was futile relative to board members Leedle and Herr as to all causes of action. Demand as to these defendants will be discussed in § III D.

11

materially misleading and inaccurate information through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein. . . .
* * *
158. As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

159. Defendants willfully ignored the obvious and pervasive problems with the Company's internal controls practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence.

In support of these causes of action, the complaint alleges that on July 5, 2007 a press release was issued by "the defendants" relative to Healthways' third quarter 2007 results which contained statements of defendant Leedle, who also participated in an investor conference call and question and answer session that same day. It is alleged that on October 17, 2007 and December 19, 2007, press releases were issued and investor conference calls with question and answer sessions held in which defendant Leedle participated[21] relative to Healthways' fourth quarter fiscal year 2007 and first quarter 2008 results, respectively. The complaint further alleges that another press release was issued on January 7, 2008 with respect to the filing of the Form 8-K. The complaint contains quotes and statements from the various press releases and excerpts from the conference calls attributed to defendants Leedle and Chaput. After recounting these press releases and calls, the complaint alleges:

112. Defendants' statements referenced above were materially false and misleading when made because defendants misrepresented and failed to disclose:

a. that Healthways was not meeting the MHS Program Phase I savings targets, among other requirements, set by CMS. As a result of Healthways' failure, CMS would not expand the MHS program to a Phase II and the company would be required to reimburse CMS for the fees they had already received through the MHS Program.

b. that Healthways was in danger of losing at least two existing contracts and was experiencing slower enrollment in an existing contract due to a decline in the need for the Company's services; and

c. as a result of the foregoing, Defendants had no reasonable basis for their revenues and earnings guidance for fiscal 2008.

---

[21] Defendant Chaput is alleged to have also participated in the October call.

12

The particular allegations relating to the members of the Audit Committee are contained in the portion of the complaint addressing demand futility, which states:

142. . . . . Plaintiff did not issue a demand upon the Demand Directors to institute this action because such a demand would be futile for the following reasons.

\* \* \*

c. During the Relevant Period, defendants O'Neil, Ballantine, Bisgard, and Neel served as directors on the Audit Committee. Pursuant to the Audit Committee's Charter, its directors were responsible for overseeing and directly participating in the Company's internal controls, accounting practices, and financial reporting process. Defendants O'Neil, Ballantine, Bisgard, and Neel breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee oversaw the preparation of improper financial statements and earnings press releases discussed herein that contained the false and/or misleading material information. Further, defendants O'Neil, Ballantine, Bisgard, and Neel failed to ensure that the Company had in place adequate internal controls over insider stock sales. . . .

Plaintiff contends that the trial court "erred in analyzing whether demand was required on the members of the Audit Committee under the so-called *'Caremark'* standard."[22] In *Caremark*, the Delaware Chancery Court held that "a director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which

---

[22] On appeal, Plaintiff argues that "the more appropriate analysis" for determining demand futility relative to his claims against the Audit Committee members was articulated in *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795 (7th Cir. 2003). In *Abbott Labs*, shareholders brought a derivative suit against a health care corporation's directors, alleging breach of fiduciary duty and asserting that the directors were liable under state law for harms resulting from consent decrees between Abbott Laboratories and the Food and Drug Administration. *Id.* at 799. The consent decrees were entered into based on six years of federal violations by Abbott Laboratories, and the shareholders sought to hold the directors personally liable for the extensive corporate losses that arose from the continuing violations. *Id.* at 801. Prior to initiating their suit, the shareholders did not make demand on the board, later asserting that demand would have been futile. The district court dismissed the complaint for failure to adequately plead demand futility. *Id.* at 799. On appeal, the Seventh Circuit Court of Appeals found that the allegations of the complaint raised a reasonable doubt as to whether the directors' actions were a product of a valid exercise of business judgment, thereby excusing demand. *Id.* at 809. In so holding, the court found that the board's failure to remedy the continuing violations amounted to a "business decision," and determined that the *Rales* demand futility test was not applicable. *Id.* at 806. Instead, the court applied the *Aronson* demand futility test. *Id.* at 806–07.

In the instant case, a specific decision of the Healthways board of directors has not been challenged, and we do not find that the alleged inaction by either the board of directors or the Audit Committee amounted to a "business decision." Accordingly, the applicable test for the demand futility was set forth in *Rales*, and we reject Plaintiff's contention that *Abbott Labs* applies.

13

the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses caused by non-compliance with applicable legal standards." *In re Caremark*, 698 A.2d at 970. The court wrote that "it is important that the board exercise a good faith judgment that the corporation's information and reporting system is in concept and design adequate to assure the board that appropriate information will come to its attention in a timely manner as a matter of ordinary operations, so that it may satisfy its responsibility." *Id.* Various courts have interpreted *Caremark* as "articulat[ing] a standard for liability for failures of oversight that requires a showing that the directors breached their duty of loyalty by failing to attend to their duties in good faith," which is premised on "showing that the directors were conscious of the fact that they were not doing their jobs." *Guttman*, 823 A.2d at 506; *see also In re VistaCare, Inc., Derivative Litig.*, CIV.04-1739-PHX RCB, 2007 WL 2460610, at *10, n.3 (D. Ariz. Aug. 23, 2007); *In re Forest Labs. Inc. Deriv. Litig.*, 450 F. Supp. 2d 379, 395 (S.D.N.Y. 2006). Considering the allegations of the complaint and the applicable law, we agree that *Caremark* sets forth the appropriate standard for our analysis of liability.

While *Caremark* governs the potential liability of directors for breach of fiduciary duty, it does not set forth the standard for determining demand futility. As noted *supra*, § III A, in determining demand futility we apply the pleading standard set forth in *Rales* and consider whether there is a substantial likelihood of liability on the part of the directors. If, based on particularized allegations, there is a substantial likelihood of liability, demand is excused.[23]

### 1. Adequacy of Internal Controls

The complaint includes the specific responsibilities of the Audit Committee as set forth in the restated charter of the committee;[24] however, there are no particularized

---

[23] "Directors who are sued have a disabling interest for pre-suit demand purposes when 'the potential for liability is not a mere threat but instead may rise to a substantial likelihood.'" *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007) (citing *In re Baxter Intern., Inc.*, 654 A.2d at 1269).

[24] The complaint sets forth the following specific allegations relative to the duties of the Audit Committee:

According to the Restated Charter of the Audit Committee of Healthways, the directors on the Audit Committee are required to, among other things:

a. Review and discuss with management the Company's internal controls report;
b. Review and discuss with management and the outside auditors the annual audited and quarterly unaudited financial statements; and
c. Discuss with management and the outside auditors policies with respect to risk management . . . and the quality and adequacy of the Company's internal controls and

(continued...)

14

allegations that the members of the committee consciously failed to perform their responsibilities under the charter in good faith or otherwise comply with the standards set forth in *Caremark* for oversight or maintenance of an adequate information and reporting system. The specific information which the complaint alleges that all directors received were monthly ARC reports from CMS and information of the cancellation or renegotiation of Healthways contracts with various of its customers.[25] The complaint does not allege, other than reference to the charter of the committee, what the charge to or responsibilities of the members of the Audit Committee were; neither does it allege with requisite particularity the failures of the committee members relative to the receipt of information or deficiencies in the internal processing of information once received. The complaint fails to set forth sufficient allegations to conclude that the members of Audit Committee members faced a substantial likelihood of liability for breach of their fiduciary duty of good faith by failing to maintain adequate internal controls. As a consequence, demand was not futile and cannot be excused.

## 2. Dissemination of False and Misleading Information

Plaintiff alleges Healthways issued press releases and financial statements which contained false and misleading information; it further alleges that the directors on the Audit Committee "were responsible for overseeing and directly participating in the company's internal controls, accounting practices, and financial reporting process." Applying the pleading standards of *Rales* and *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007), the allegations of fact in the complaint relative to the dissemination of false and misleading information are insufficient to demonstrate that the Audit Committee members faced a substantial likelihood of liability for breach of the fiduciary duties of loyalty and good faith.

The complaint specifically excerpts comments allegedly made by defendant Leedle in the press releases and alleges, with regard to demand futility, that the Audit Committee "oversaw the preparation of improper financial statements and earnings press releases discussed herein that contained the false and/or misleading material information." Also excerpted are comments made by defendants Leedle and Chaput in investor conference calls. The complaint does not allege what, if any, actions were taken by the committee members relative to the financial statements, press releases or conference calls. Other than stating in conclusory language that the Audit Committee "oversaw" the preparation of these press releases and financial statements, there are no allegations that the Audit Committee members themselves disseminated false and misleading statements. We do not infer that each Audit

---

(...continued)
processes that could materially affect the Company's financial statements and financial reporting.

[25] The complaint does not specifically allege how this information was transmitted to the directors.

Committee member, solely by the nature of his or her position,[26] had knowledge of alleged false and misleading statements or actively participated in the dissemination of such information. Accordingly, the members of the Audit Committee, under the allegations of the complaint, did not face a substantial likelihood of liability for breach of the duty of loyalty, *see Guth v. Loft, Inc.*, 5 A.2d 503 (Del. 1939); neither are the allegations of the complaint sufficient to subject defendants to substantial likelihood of liability for breach of the duty of good faith. *See Malone v. Brincat,* 722 A.2d 5 (Del. 1998).[27] Accordingly, demand was not excused.

### *D. Allegation that Demand was Futile as to Defendants Leedle and Herr*

Plaintiff argues that demand was futile as to defendants Leedle and Herr because of their employment with Healthways. The complaint states in pertinent part:

> d.    The principal professional occupation of defendant Leedle is his employment with Healthways as its CEO and President, pursuant to which he has received and continues to receive substantial monetary compensation and other valuable benefits. Thus, defendant Leedle lacks independence from interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action; and
> e.    At the time of the initiation of this action, the principal professional occupation of defendant Herr was his employment with Healthways as a professional consultant, pursuant to which he received substantial monetary compensation and other valuable benefits. Thus, defendant Herr lacks

---

[26] *In Rattner v. Bidzos*, C.A. No. 19700, 2003 WL 22284323, at *10, n.53 (Del. Ch. Sept. 30, 2003), the Delaware Chancery Court specifically found that it is insufficient for a plaintiff to be excused from the demand requirement solely by pleading that a director, by virtue of his or her position, must be charged with knowledge of wrongful conduct. *See also See Mehrvar ex rel. KVH Indus., Inc. v. Van Heyningen*, N.C./04-0375, 2005 WL 2385939 (R.I. Super. Sept. 27, 2005).

[27] As the Supreme Court of Delaware noted:

> Shareholders are entitled to rely upon the truthfulness of all information disseminated to them by the directors they elect to manage the corporate enterprise. Delaware directors disseminate information in at least three contexts: public statements made to the market, including shareholders; statements informing shareholders about the affairs of the corporation without a request for shareholder action; and, statements to shareholders in conjunction with a request for shareholder action. Inaccurate information in these contexts may be the result of a violation of the fiduciary duties of care, loyalty or good faith.

*Malone v. Brincat*, 722 A.2d 5, 10-11 (Del. 1998).

independence from interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

Assuming, arguendo, that Leedle and Herr were disabled from considering demand on all causes of action due to their employment with Healthways, we find that demand is not excused.

Under *Rales*, Plaintiff must "raise[] a reasonable doubt regarding the ability of *a majority* of the Board to exercise properly its business judgment in a decision on a demand had one been made at the time this action was filed." *Rales*, 634 A.2d at 937 (emphasis added). We have held that the complaint only demonstrates demand futility as to defendants Cigarran, Herr, and Lytle with respect to the claim for insider selling and misappropriation of information. We have not found a disabling interest or lack of independence with respect to any other member of the board on any other claim asserted. Therefore, a finding of demand futility with respect to Leedle and Herr would bring the total number of directors unable to consider demand on the insider selling and misappropriation of information claim to four. Because Healthways' board of directors was comprised of eleven members at the time this action was filed, plaintiff was required to raise a reasonable doubt that at least six members of the board were disinterested or independent in order to demonstrate demand futility.

*E. Effect of Federal Court Ruling Denying Motion to Dismiss in Related Securities Class Action*

Plaintiff asserts that the trial court erred in dismissing the derivative action "in light of the federal court's ruling on the challenged insider trades by Cigarran, Herr, and Lytle."[28] Plaintiff claims that "many of the insider trades challenged by the plaintiffs to the Securities Action [the action pending in federal court] are the exact same sales that the Appellant challenged in the Derivative Action, including [Cigarran's, Herr's, and Lytle's insider sales]." Plaintiff characterizes the pleading standards applicable to this case as "far more favorable and relaxed" than the scienter standards imposed by the Private Securities Litigation Reform Act ("PSLRA") and argues that, since the federal court has denied a motion to dismiss, defendants' motion in this case should be denied as well. Defendants respond that denial of a motion to dismiss in a federal securities case is not enough to

---

[28] The complaint alleges that Healthways has been the subject of multiple securities class action suits that were consolidated in federal district court in the Middle District of Tennessee and that "nearly all of the defendants to the Securities Action are also defendants to the instant shareholder derivative action, including defendants Cigarran, Leedle, Chaput, Hunter, and Kelliher." The complaint states that, on March 9, 2009, the district court issued an opinion denying defendants' motion to dismiss the securities action in its entirety, and that the court "issued several findings concerning conduct alleged herein by Plaintiff." The record of the district court action was not before the trial court and is not a part of the record on appeal.

17

demonstrate that demand would have been futile with respect to insider trading allegations; they also cite numerous cases for the proposition that courts routinely grant motions to dismiss for failure to properly allege demand futility, notwithstanding denial of a motion to dismiss in a parallel federal securities class action.

The apparent holding in the securities litigation in federal court is not applicable in the manner urged by plaintiff. In *In re Vistacare, Inc. Deriv Litig.*, the United States District Court for Arizona articulated the difference between the standard for pleading demand futility in Delaware and the standard a federal court applies when considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court opined:

> The burden to establish demand futility is "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). "What the pleader must set forth are particularized factual statements that are essential to the claim." *Brehm*, 746 A.2d at 254. Conclusory language "does not comply with these fundamental pleading mandates." *Id.* However, a plaintiff is not required to plead evidence inasmuch as discovery is foreclosed. *See Levine,* 591 A.2d at 207. In any event, if a plaintiff fails to meet these stringent requirements, the complaint must be dismissed even if it pleads otherwise meritorious claims. *See Kaufman v. Belmont,* 479 A.2d 282, 286 (Del. Ch. 1984).

*In re VistaCare, Inc., Derivative Litig.*, CIV.04-1739-PHX RCB, 2007 WL 2460610, at *2 (D. Ariz. Aug. 23, 2007).

Plaintiff's burden in the instant case is to allege sufficient facts to support his contention that pre-filing demand in this derivative suit would have been futile as to a majority of Healthways' board of directors. This is a substantial burden which is not aided by the apparent holding in securities litigation that the claims against certain defendants were adequately alleged and could proceed. The inquiry as to whether the allegations of the complaint in the securities action stated a claim upon which the court could grant relief is separate and distinct from the inquiry before us.[29]

---

[29] Even if it were appropriate for us to make reference to a ruling on a motion to dismiss in federal securities litigation in determining the issue of demand futility in ths litigation, the record in this case is insufficient for us to determine whether and the extent to which we should be influenced or bound by any such ruling.

## IV. Conclusion

Because Plaintiff has not demonstrated demand futility on a majority of Healthways directors on any of his causes of action, demand is not excused.  Accordingly, the ruling of the Davidson County Chancery Court is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE